COATES (DUNDORE v.). See Case No. 4,142.

## Case No. 2,916.

COATES v. MUSE et al.

[1 Brock. 529.][1]

Circuit Court, D. Virginia. June 4, 1821.

DECREE AGAINST ADMINISTRATORS—ENFORCEMENT—ACCOUNTING—POWER OF COMMISSIONER—TAKING UP REPORT—PRACTICE—OPENING DECREE.

1. A joint decree was rendered against T. M. and E. M. administrators, with the will annexed of H. M., and his principal devisees and legatees, for a considerable sum of money, being the amount of unadministered assets in their hands. Before this decree was satisfied T. M. died, having appointed his co-administrator, his own executor, who qualified as such. The plaintiff filed her bill, to revive the decree against E. M., both in his character of surviving administrator of H. M., and as executor of T. M. E. M. also died, without answering the plaintiff's bill, and a bill of revivor, was filed against his administrator, and also against the administrator, de bonis non, of T. M. These last defendants having answered this bill, the court directed them to settle their accounts of their administration of the estates of E. M. and T. M. respectively, and also of the administration of E. M. and T. M. of the estate of H. M., but did not require an account of the administration, of the estate of T. M., by E. M. his executor. The commissioner, after due notice to the defendants, proceeded to execute the decretal order of the court, the defendants failing to attend, and reported the proportions, by which the original decree ought to be charged on the estates of T. M. and E. M. At the same term to which this report was made, the report was affirmed, and the matter thereof decreed, no counsel appearing for the defendants. Subsequently R. B. one of the administrators, de bonis non, of T. M., applied for an injunction to stay proceedings under the last mentioned decree, so far as it affected the estate of T. M., assign-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[1] [Reported by John W. Brockenbrough, Esq.]

ing various errors in the proceedings above recited, and praying that the decree might be opened, and the alleged errors corrected. The court *held*: That there was no error in failing to direct an account of the administration of E. M., of the estate of T. M., such an account not being called for by plaintiff or defendants. Although in a suit against the representatives of an original debtor, the subject may be pursued further than those representatives, the plaintiff is not bound to do so. If E. M., as executor of T. M., is indebted to the estate of his testator, he is not distinguishable, so far as respects the claim of the plaintiff, from any other debtor.

2. That the commissioner, in proceeding to act ex-parte, on the defendants failing to appear, adopted a course of very doubtful propriety. At all events, the defendants would, on motion, be allowed to repair their fault, especially if their non-attendance could be excused.

3. That there is no positive rule in this court, forbidding a report to be considered at the term to which it is made. The general practice has been, to permit a report, in any degree complex, to lie for a second term, for consideration and exception, on the motion of one of the parties. In plain cases, the report is generally taken up at the first term.

4. That the two administrators of H. M., being also his devisees and legatees, and having acted together in the collection, and payment of moneys, it is presumable that they arranged between themselves, their respective claims upon the estate of their testator, and (in the absence of testimony to the contrary) that each retained in his own hands, an equal share of the estate. And as they, knowing the state of their own affairs, permitted a decree to be rendered jointly against them, the just inference is, that each was bound for an equal portion of that decree. If either had paid off the whole of the decree, he, so paying, might have called on the other for a moiety of the decree so paid. And the subsequent decree of this court ought, therefore, to have been against the representatives of each, in the first instance, for a moiety only.

5. That this decree was not a final decree, so as to preclude the court from opening it to let in its real merits, which may have been excluded by any excusable misapprehension of the party, or error, or irregularity of the court.

MARSHALL, Circuit Justice. In 1805, the plaintiff in this cause, instituted her suit in this court, against Thomas Muse and Elliott Muse, who were administrators, with the will annexed, of Hudson Muse, deceased, and also, his principal devisees and legatees, to obtain payment of a considerable sum of money, due from Hudson Muse, in his lifetime, to the plaintiff's testator. Others of the legatees of Hudson Muse, were also made parties, but against them, no decree was ever given. The estate of Hudson Muse, except the sums which were disbursed in the payment of debts, and some small portions of the legacies, which had been paid, the amount of which is not ascertained, was retained in the hands of the administrators. Their accounts were referred, and the commissioner reported, that the sum of $7493.76, remained in the hands of the administrators, for which sum, a decree was pronounced on the 3d of June, 1811. In 1817, the plaintiff filed her bill in this court, for the purpose of reviving this decree, and carrying it into effect, against Elliott Muse, as executor of Thomas Muse, and surviving administrator of Hudson Muse. Elliott Muse, also, departed this life, without answering this bill, upon which, in June, 1818, a bill of revivor was filed against Zachariah Crittenden, the administrator of the estate of Elliott Muse, deceased, and Robert Blakey and Harry Gaines, the administrators, with the will annexed, de bonis non, of Thomas Muse, and against Richard Corbin, the executor of John T. Corbin, who was a surety in the administration bond of Thomas and Elliott Muse, executed by them, as administrators of Hudson Muse. In May, 1819, the defendants, Harry Gaines, and Robert Blakey, administrators of the estate of Thomas Muse, unadministered by Elliott Muse, filed their answer, stating, that on the books of Elliott Muse, the estate of Thomas Muse is debited with its proportion of the debt now claimed, and the whole is stated to be settled with W. C. Williams, the attorney for the plaintiff: that they had understood, that Elliott Muse executed a mortgage to W. C. Williams, for the security of the debt which, through negligence, was never recorded. They, therefore, claimed to be discharged. In July, 1819, Zachariah Crittenden, administrator of Elliott Muse, deceased, filed his answer, stating, that he had fully administered, before any knowledge of the decree rendered in favour of the plaintiff.

At the May term of this court, 1820, the court directed the defendants, Gaines and Blakey, to settle the account of the administration of Thomas Muse, of the estate of Hudson Muse, deceased, and also, an account of their own administration of the estate of Thomas Muse. The court also directed the defendant, Crittenden, to settle the account of the administration of Elliott Muse, of the estate of Hudson Muse, and his own administration, of the estate of Elliott Muse, before one of the commissioners of this court. In October, 1820, due notice having been given to the defendants, the commissioner proceeded to execute this decretal order, and the defendants having failed to attend, he reported the proportions, by which the original decree ought to be charged on the estates of Thomas and Elliott Muse. His report charges $5155.02, part of this decree, on the estate of Thomas Muse, and $2338.74, the residue thereof, on the estate of Elliott Muse. This report was filed on the 14th of October, 1820. It states the principles on which the commissioner proceeded, in thus apportioning the debt due to the plaintiff, and also states some other matters, supposed by him to shed some light on the situation of the defendants, with regard to each other. At the November term, 1820, this report was confirmed, and the matter thereof decreed, no counsel appearing for the defendants. In January, 1821, Robert Blakey, one of the administrators of Thomas Muse, deceased, applied to one of the judges

of this court, for an injunction to stay, proceedings on this decree, so far as respected the estate of Thomas Muse, praying that the decree might be opened, and the plaintiff have the relief to which he might be decided to be entitled. The injunction was granted, to continue to the first day of this term, and the whole case now came on to be decided on its merits.

In his bill for an injunction, the plaintiff states sundry errors in the proceedings and decree, for which he thinks it ought to be opened, and set aside, and also, excuses his non-attendance on the commissioner, and his neglect of the case in this court. The errors alleged, are: 1st. That the decretal order for an account, did not direct an account of the administration of the estate of Thomas Muse, by Elliott Muse. 2d. That the commissioner has made his report ex-parte, not being authorized so to do, by the order under which he acted. 3d. That the court acted on the report during the term to which it was made, instead of leaving it to the next term for exceptions. 4th. That the decree is not warranted by the report, since it takes no notice of a sum reported to be due from the estate of Elliott Muse, to that of Thomas Muse, to an amount equal to the whole sum due to the plaintiff. These errors as assigned, will be severally considered.

1st. An account of the administration of Elliott Muse, of the estate of Thomas Muse, ought to have been directed. That this account might have been directed, especially as all the parties were before the court, will not be denied. That it ought to have been directed, is not so obvious. If Elliott Muse, as administrator of Thomas Muse, is indebted to that estate, he is not distinguishable, so far as respects the claim of the plaintiff, from any other debtor. Although, in a suit against the representatives of an original debtor, the subject may be pursued further than those representatives, I know of no case in which it has been decided, that the plaintiff is bound to do so.[2] In this particular case, the plaintiff, in her bill, has not required, that this administration account should be settled. It is impossible to say what delays might attend its settlement; and though the plaintiff would be bound to submit to these delays, had she made any demand on the representatives of Elliott Muse, in virtue of his administration of the estate of Thomas Muse, it would be unreasonable to impose them on her should they be considerable, when she makes no such demand. In the bill praying the injunction, this supposed error is more relied on, because, as is alleged, the defendants, in their answer, demand such account. Had this demand been really made, it would probably have been attended to,

so far as was consistent with a just regard to the rights of the plaintiff, but might have been disregarded without error. In such a case, the court would be regulated by circumstances. But I understand the answer very differently. I can discover in it no claim for this account; nor was it claimed at the hearing. It would have been rather an extraordinary order, had this court directed an administration account to be taken, which was neither required by the plaintiff or defendant, and did not appear to be essential in the cause.

2d. The report, itself, being made by the commissioner ex parte, is considered as a nullity, because it was not authorized by the decretal order. Undoubtedly the decretal order directs the account to be made up by the defendants. They are to be the actors, and the order does not direct the commissioner to proceed ex-parte, on their failing to appear. Of the propriety of proceeding ex-parte, under such an order, without notice, therefore, to the defendants, I am not perfectly satisfied. Undoubtedly, the court would, on motion, have allowed the defendants, or either of them, to repair their fault, especially if their non-attendance could be excused, as it is in this case; and would feel much disposed, even after the report was acted on, to let in a just defence, if in its power.

3d. The court is also supposed to have erred, in taking up the report at the first term, contrary to its own rule. I believe no positive rule has been made on this subject. Perhaps one ought to have been made. There has been a practice, and the court ought, undoubtedly, to respect its own practice. That, to the best of my recollection, is to permit original reports, in any degree complex, to lie to a second term for consideration and exception. This is generally done on the aplication of one of the parties. In plain cases the report has frequently, I might say commonly, been taken up at the first term. I cannot pronounce it an error to take up a report at the first term; but I would listen with great favour to any objections made to a report so taken up, and to any excuse for not having made those objections in the proper time, if the cause were in a situation to allow me to listen to them. This is, undoubtedly, a case in which the report would have been permitted to lie, if desired.

4th. The fourth error assigned is in the decree. It is, that the whole sum is not decreed against the estate of Elliott Muse, since that estate appears to be indebted to the estate of Thomas Muse, in a larger sum than the plaintiff claims from both. The representative of Elliott Muse was not required to settle his administration of the estate of Thomas Muse, nor did he attempt to settle it. The representatives of those two estates were not directed to settle accounts between them, nor has either of them made the attempt. The commissioner, however, has, as a volunteer, reported the inventory and appraisement

---

[2] NOTE, by Chief Justice Marshall. It has been determined in this court, on full consideration, I think in a suit against Johnson's representatives (see Corbet v. Johnson's Heirs [Case No. 3,218]), that he is not bound to do so.

of the estate of Thomas Muse, and has supposed his executor to be indebted to the full amount, whatever debts he may have discharged; and that, without regard to the answer of the defendants, his administrators, in which they admit themselves to be in possession of part·of that very estate. If the court had acted on the presumption, that this debt was actually due, its decree would have been equally without example, and without excuse.

A much more serious objection to the decree has been made in argument. The report, and, consequently, the decree affirming it, is said to be erroneous in this, that it has adopted a principle in apportioning the debt, which is not authorized by any testimony before the commissioner. He has charged each administrator with the amount of his own purchase at the sale of the estate, and has divided the residue of the debts equally between them. I think this objection to the report, and the decree, well founded. Thomas and Elliott Muse considered themselves in the character of devisees and legatees, as well as administrators of Hudson Muse. They acted together, so far as the court can perceive, in the collection and payment of moneys. There is nothing unreasonable in the supposition, that they arranged between themselves their claims upon the estate of Hudson Muse, and that each retained in his own hands, computing his particular debt, as much of the estate as the other. If this is not extremely improbable, and is not contradicted by testimony, the situation in which the cause stood when it came before the commissioner, a situation in which it was placed by the parties themselves, required that this should be assumed as the basis of the report and of the decree. Thomas and Elliott Muse were acquainted with their own transactions. They must be supposed to have understood their own situation with the estate, and with each other. Possessing this understanding, and called upon to settle their administration account, the report states a balance in their hands, for which a decree is rendered, binding them equally. Had they been liable for this debt in different proportions, the court would have decreed against them severally, and according to their proportions. But they permit a report, stating a balance in the hands of both, and a decree upon that report, binding them equally. This decree constitutes a joint debt, of which either paying the whole, could recover a moiety from the other. In the absence of all testimony, showing that this decree ought to be satisfied in unequal proportions, Thomas or Elliott Muse, having satisfied it, could have called on the other for contribution, and this demand could not have been repelled by light presumptions. I am, therefore, of opinion, that the decree, in the actual state of the testimony, ought to have been revived equally, and that the representatives of each of the parties, at least in the first instance, ought to have been subjected only to a moiety of it. Upon these principles the decree ought to have made against the representatives of Thomas Muse for $3746.88, with the interest which accrued thereon. If it is final, and beyond the reach of the court, it ought to stand enjoined for the residue. If the court may now open it, the reasons for doing so, which are stated in the bill, and have been noticed in this opinion, and the excuse alleged in the bill for not appearing before the commissioner, are I think, sufficient to justify its being opened, and to induce the court now to make the order, which would have been made on the application of the party at the last term. I think, upon authority, the decree may be now opened. The case of Templeman v. Steptoe, 1 Manuf. 339, goes far in showing that this decree is not final. I had been rather inclined to think otherwise on the reason of the thing, but on that point, I give no opinion. I ·think the authorities quoted at the bar, and especially that from 1 Ves. 205, and that in Amb. 89,[3] are strong authorities for showing that a court of equity, may, on sufficient circumstances, open a decree, and let in the real merits of the cause, which have been excluded by any excusable misapprehension of the party, or irregularity, or error of the court. I shall follow those precedents in this case, and shall open the decree, and refer the accounts back to the commissioner, taking care to guard the plaintiff against unreasonable delay.·

Decree: The court being satisfied that the decree pronounced in the first suit, at the last term, is erroneous in apportioning on the estate of Thomas Muse, a larger part of the debt due to the plaintiff in that suit, than ought to be charged on said estate: and being also satisfied with the excuse made by the said Robert Blakey for his non-attendance on the commissioner: and for his failure to make his objections to the report on its return to this court, doth open and set aside the decree, made in the said first cause, at the last term, and doth refer the cause to one of the commissioners, to execute the order made on the 5th day of May, 1820; and he is further directed to receive any proper evidence, which may be offered to show, that any part of the debt claimed by the plaintiff, in said first suit, has been paid, or that it ought to be apportioned on the estates of the intestates, respectively, of the defendants, by a different rule from that adopted in the report of the 7th of October last. The commissioner is directed to proceed ex-parte, if either of the defendants shall fail to attend. And the commissioner is directed to make his report to the court at the next term.

[NOTE. The commissioner reported, and a decree was pronounced directing Crittenden, as

---

[3] Kemp v. Squire, 1 Ves. Sr. 205, and Cunyngham v. Cunyngham, Amb. 89.

administrator, to pay the sum of $3,731.32 with interest, out of the assets in his hands, and reserved its decision as to the ultimate responsibility of the parties. Case No. 2,917. For subsequent proceedings herein, see Case No. 2,918.]